VALU FAGASOAIA and MAINA ATAFUA for themselves and on behalf of the FAGASOIA FAMILY of Nu'uli, Plaintiffs

v.

TUITOGAMAATOE FANENE, SIUFAGA FANENE, TUMEMA KIM, DONG IK KIM, PUAO SIONE, TEVESI SIONE, and PUAILOA TAVETE, Defendants

High Court of American Samoa
Land and Titles Division

LT No. 34-90

November 15, 1990

Before REES, Associate Justice, VAIVAO, Associate Judge, and AFUOLA, Associate Judge.

Counsel: For Plaintiffs, Asaua Fuimaono
For Defendants, Charles V. Ala'ilima

This case arose from a dispute among members of a family (and an unrelated storekeeper allied with one of the two factions within the family) over use of family land.

The land in question is a fairly small tract on both sides of the main road in Nu'uli, in an area that has seen intense commercial development within the last ten years. It is undisputed that the land, called "Papa," belongs to the Fagasoaia family. All parties are related to the family by blood or marriage except Tumema Kim and Dong Ik Kim.

The primary occupant of the land on one side of the road, until the events giving rise to this action, was plaintiff Valu Fagasoaia. At a much earlier time the land was occupied by Valu's parents and siblings, including defendant Puailoa, but Valu was for many years the only occupant. In 1978 defendant Tuitogamaatoe Fanene (hereinafter "Tu'i") came to Valu, her uncle, to ask permission to build a residential house on part of the land in the area he had been occupying. He gave his permission. Tu'i then secured a Separation Agreement allowing the construction of this dwelling and providing that the dwelling itself would be her personal property although the land would continue to belong to the Fagasoaia family.[1]

Although Tu'i testified that she had originally intended the house she built pursuant to the 1978 separation agreement to be a dwelling and that she and her husband occasionally slept there at first, although they had another house nearby, it is clear that almost from the beginning this house was used for business purposes. The first tenants, during the early 1980s, were some air conditioning repairmen. In 1985 the house was

---

[1] The signature on this Separation Agreement is "Fagasoaia Lio"; plaintiffs have introduced signatures of the then senior matai of the Fagasoaia family to show that he usually signed his name "Fagasoaia I. Leasialagi" and in a somewhat different hand from the one on this document. We need not decide whether the signature on the 1978 separation agreement was or was not that of the then Fagasoaia, because no issue presently before us depends on such a determination.

leased to defendant Dong Ik Kim for $250 per month. Although the lease did not specify for what purposes the house was to be used, provisions allowing the lessee to build an "extension" clearly contemplated the present commercial use. In 1986 a new agreemen was signed between Tu'i and the Kims; the gist of this document was that in respect of some $27,727 spent by the Kims for building an extension, they would pay no rent at all until July 1990 and would thereafter pay $550 per month through 1996.

Neither of these leases --- nor the transformation of the dwelling house into a much larger store building with a parking lot, all on Fagasoaia land --- was made with permission of Fagasoaia. Nor was Valu, who still lived on the land and still regarded himself as being somehow "in charge," especially happy about the changes. When he saw some old coconut trees being cut down for the parking lot, he confronted the workmen and told them to stop. They did so, but returned to complete the task on the instructions of Siufaga Fanene, husband of Tu'i. At one point Valu seems to have taken the law into his own hands by throwing rocks at the store windows. Tu'i then arranged for her tenant Kim to pay Valu a small periodic stipend; she testified that this was an act of pure love on her part, but pragmatic considerations may also have figured in the decision. In 1989 Tu'i ordered the stipend stopped. Tu'i says love was again her only motive, as she did not wish to fuel her uncle's drinking problem. It also appears, however, that at about this time Uncle Valu had been consorting with plaintiff Maina, a person from another branch of the Fagasoaia family who had recently returned from off-island and had been expressing curiosity about the commercial complex that had gone up on family land.

Meanwhile, the principal occupants on the other side of the road had been the immediate family of defendant Puao Sione. It is undisputed that these people built dwelling houses on this part of the land at various times during the 1960s and 1970s, always with the permission of the senior matai Fagasoaia. In 1989, apparently through the good offices of Tu'i, Puao and her husband leased an existing dwelling house on their side of the road to Mr. Kim for ten years. The rent was to be $700 per month for the first five years and $900 per month thereafter. At about this time Mr. Kim also began building an "extension" to this dwelling house, in the form of a warehouse about three times as large as the dwelling itself. According to the testimony of defendants Kim and Puao, the arrangement is that Mr. Kim will be able to deduct the entire cost of building the warehouse from his $700 monthly rent until such time as he has been compensated for all his expenses. This will take about ten

years, the entire term of the lease. Mr. Kim will then have the option to renew the lease --- of the warehouse as well as the dwelling --- for an additional ten years, apparently at the rate of $900 per month.

In 1989 and 1990 at least three other buildings have been built or started on this land. These include a generator building behind the store on the Tu'i/Valu side of the road, a new dwelling house on the Puao side of the road under the auspices of Puao's husband, and a dwelling on the Valu side of the road under the auspices of Valu. On documents appertaining to some of the more recent construction, defendant T.M. Puailoa, the brother of Valu and father of Tu'i, has begun signing his name as "landowner."

Fagasoaia Leasialagi (Lio), the sa'o of the family, died in or around 1987. He was still alive at the time Mr. Kim added the extension to the Tu'i house and began operating his store there, but had died by the time arrangements were made for the warehouse on the Puao side of the road. The family has recently selected a new sa'o, who will be installed in a few months after the prerequisite formalities have been completed.

We conclude that the only thing defendant Dong Ik Kim has leased from Tu'i for $550 per month is the right to use her original dwelling house. Similarly, the $700 lease covers the dwelling house of Puao. (These rental prices do not differ markedly from prices for similar structures in this area.)

The parking lot, the generator building, and the two "extensions" (the storefront area and the warehouse), as well as the property on which they were built, are the property of the Fagasoaia family. No lease exists with respect to any of these properties. The people who signed documents purporting to create various contract and/or property rights in these buildings had no authority to do so. This was especially true prior to the death of Fagasoaia, who had sole authority to authorize such construction and whose permission was not asked. Thereafter, during the vacancy of the family's matai title, no one family member or faction had the power to effect a radical transformation of family property without a clear consensus of the entire family.

The new Fagasoaia will be the person with whom Kim should negotiate should he wish to continue as lessee of the family properties. Pending any agreement between Fagasoaia and Kim, we take judicial notice of such negotiated commercial rents as have come to the Court's attention in other recent cases in order to fashion the relief to which the

94

family appears entitled in exchange for defendant Kim's continued use and occupation of its property. We estimate the rental value of the store, generator building, and parking lot to be $1000 per month, over and above the $550 per month payable to Tu'i for her original dwelling house. We estimate the rental value of the warehouse space to be $1500 per month, apart from rental on the attached dwelling house of Puao.

Because Kim has already been fully compensated for the cost of building the store by his retention of the rent over several years, he should pay the family $1000 per month (in addition to the $550 he pays Tu'i) should he wish to retain possession of the store pending the installation of the new Fagasoaia. Because he has not yet been fully compensated for his expenses in building the warehouse --- and because it would be unfair to Puao to withhold such expenses from future rentals of her dwelling house insofar as she is not the owner of the warehouse and will not receive rentals from it after Mr. Kim has deducted his expenses --- he may deduct $500 per month from the $1500 monthly warehouse rental until such time as his expenses have been fully compensated. This credit for expenses is in lieu of the present deduction of $700 per month against rentals due on the dwelling house of Puao, and will be allowed on the condition that defendant Kim submit within ten days a full accounting of such expenses. The family will be allowed an $18,000 offset against the total amount of such credits to compensate it for the rental value of the warehouse during the year it has already been in use.

The $2000 monthly rent for the family properties for the current month is due immediately, and for succeeding months will be due on the first day of each month.

$200 of this monthly amount is payable directly to plaintiff Valu as compensation for the use of land formerly occupied by him. Although any right Valu had to make decisions about this land is and always has been subject to the ultimate authority of the sa'o, of all the family members in this case he appears to have been the most inconvenienced and the least compensated. Pending a comprehensive decision about the long-term use of this land by the new sa'o, which would presumably include some compensation to displaced family members, Valu has the same right as Puao (and a better right than Tu'i) to a share in the income from this land.

The remaining $1800 per month should be placed in a trust account in the name of the family, from which no withdrawals should be

made without Court approval, pending the installation of the new Fagasoaia. Pending the submission by counsel and approval by the Court of documents establishing such a trust, the funds may be deposited in the registry of the Court.

All parties will be permanently enjoined from authorizing further construction on this land, except that Valu may complete the single small residential dwelling which he had already begun to construct at the time of trial.

It is so ordered.